IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02175-PAB-KLM

SEJAL QUAYLE, M.D.,

    Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO, a Colorado corporation, d/b/a Centura Health-Mercy Regional Medical Center,
CENTURA HEALTH PHYSICIAN GROUP, and
WILL MCCONNELL, an individual,

    Defendants.

## ORDER

This matter is before the Court on defendants' Motion for Summary Judgment [Docket No. 32]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Plaintiff is a physician who began working for Mercy Hospital in the urology department in 2008. *See* Docket No. 32 at 2, ¶ 1. On November 17, 2011, Stephanie Woitaszewski, a nurse, filed a complaint regarding plaintiff due to plaintiff's behavior during an operation as to a technician, Christy. *Id.*, ¶ 2. Plaintiff felt Christy's abilities were insufficient for the operation and, as a result, had a negative interaction with her during the operation. *Id.* Plaintiff had a meeting with Cathy Roberts, Director of Human

---

[1] The following facts are undisputed unless otherwise indicated.

Resources, regarding the incident, where plaintiff agreed to act more professionally.[2] *Id.*, ¶ 4. On July 15, 2013, the Chief Executive Officer of Mercy, Will McConnell, and the Chief Medical Officer, Dr. Steve Bush, placed plaintiff on a "Physician Performance Redirection and Improvement Plan" ("PRIP") in response to several complaints regarding plaintiff. *Id.* at 2-3, ¶ 5. Those complaints related to inappropriate language and comments around patients, rude and abusive behavior toward staff, and a hostile work environment plaintiff created. *Id.* In October 2015,[3] Dr. Bush placed plaintiff on a second PRIP "as a result of continued complaints from staff that she abused and demeaned them, used profanity, created an intimidating atmosphere in the urology clinic, and yelled patients' protected health information down public hallways." *Id.* at 3, ¶ 7. The PRIP contained language that this was plaintiff's "final written warning." *Id.*, ¶ 9. The PRIP required plaintiff to "treat staff with respect, set a professional tone in the clinic, refrain from yelling and using profanity, comply with the Code of Medical Staff Profession [sic] Conduct and other behavior standards." *Id.*, ¶ 11.

On July 25, 2017, plaintiff saw patient CG at the clinic.[4] *Id.*, ¶ 12. Crystal McCord, a nurse, attempted to place a catheter to resolve CG's urinary retention but was unsuccessful. *See id.* at 4, ¶ 14. Ms. McCord suggested that CG be treated in an

---

[2] Plaintiff denies this fact, but only asserts that her and Ms. Woitaszewski both agreed to act more professionally, rather than just plaintiff. *See* Docket No. 39 at 2, ¶ 4. Accordingly, plaintiff does not deny that she agreed to act more professionally.

[3] Defendants assert this occurred on October 8, *id.*, while plaintiff asserts it occurred on October 22. Docket No. 39 at 2, ¶ 7. The precise date is immaterial.

[4] Plaintiff disputes why CG was in the clinic, but does not dispute that she saw him. *See* Docket No. 39 at 2, ¶ 12.

operating room, but plaintiff decided that the procedure could be completed at the clinic. *Id.*, ¶¶ 16-17. Plaintiff told CG during the procedure, while he was in significant pain, that he needed "to hold still" and that "you should have taken responsibility for your own health, and that's why you're in this situation."[5] *Id.*, ¶ 19. After the procedure, just outside of the room, plaintiff called CG an "asshole." *Id.*, ¶ 21; *see also* Docket No. 39 at 3, ¶ 21 (stating that plaintiff does not recall whether she called CG an asshole, but "probably" did). She then refused to come back into the room and speak with CG.[6] Docket No. 32 at 4, ¶ 21. Employees subsequently complained about plaintiff's handling of CG's procedure.[7] *See Id.* at 5, ¶ 23.

On July 27, 2017, a meeting was held with, at a minimum, the Administrator of the Urology Clinic, Cody Palmer, regarding CG "and the events surrounding his care."[8]

---

[5] Plaintiff denies this fact. *See* Docket No. 39 at 3, ¶ 19. However, her explanation is that she "does not admit or deny that the statement was made." *Id.* Federal Rule of Civil Procedure 56(e)(2) permits a court to deem a fact not "properly address[ed]" as "undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e)(2); *see also* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv (stating that a denial must be accompanied by a "specific reference to material in the record supporting the denial"); *see also id.*, § III.F.3.b.ix ("Failure to follow these procedures . . . may cause the Court to deem certain facts as admitted."). Given that plaintiff does not admit or deny the statement, the statement is deemed admitted.

[6] Plaintiff denies this fact but only points to her deposition, which states that she does not recall this happening. *See* Docket No. 39 at 3, ¶ 21. This is insufficient basis to deny defendants' asserted fact, which relies on employee statements that this situation occurred. *See* Docket No. 43 at 2-3, ¶ 21. Accordingly, the Court deems this fact admitted.

[7] Plaintiff denies this fact on the basis that the author did not remember where the information came from, but plaintiff does not deny that employees complained about her handling of the situation. *See* Docket No. 39 at 3, ¶ 23.

[8] Plaintiff denies that Dr. Bush also attended the meeting, but does not deny that the meeting occurred. *See* Docket No. 39 at 3, ¶ 24.

*See id.*, ¶ 24. On August 1, 2017, Dr. Bush and Ms. Roberts discussed the CG incident with plaintiff. *Id.*, ¶ 25. At least one staff member reported that plaintiff reached out to her asking about "who turned her in."[9] *Id.*, ¶ 26. On August 2, 2017, Dr. Bush and Ms. Roberts told plaintiff that she was suspended while they investigated the CG incident, including plaintiff's contacting of staff. *Id.*, ¶¶ 27-28. Several clinic staff were subsequently interviewed regarding the incident. *Id.*, ¶ 29.

On August 21, 2017, Mr. McConnell and Ms. Roberts issued plaintiff a third PRIP. *Id.* at 6, ¶ 32. This PRIP reviewed the contents of the previous two and also stated that plaintiff must take responsibility for her actions, which had "conflicted with organizational core values." *Id.*, ¶¶ 33-34 (alterations omitted). Plaintiff refused to sign the PRIP because she disagreed with it.[10] *Id.*, ¶ 36. Instead, plaintiff authored her own PRIP and stated that she believed her behavior was "unequivocally within expected norms of professional conduct at Mercy." *Id.*, ¶ 37. Plaintiff returned to work on August 31, 2017. *Id.*, ¶ 38.

On November 9, 2017, plaintiff, Mr. McConnell, and Ms. Roberts had a meeting where Mr. McConnell provided plaintiff with a revised PRIP that did not require plaintiff to admit wrongdoing. *Id.*, ¶¶ 39-40. Plaintiff also refused to sign this PRIP. *Id.* at 7, ¶ 42. At that same meeting, Mr. McConnell suggested that plaintiff "meet with an executive coach to improve her communication skills." *Id.*, ¶ 43. Sometime after,

---

[9] Plaintiff denies that multiple staff members reported that she contacted them, but does not deny that at least one did. *See* Docket No. 39 at 3, ¶ 26.

[10] Plaintiff denies this fact but cites to her own deposition that states she disagreed with the PRIP and refused to sign it. *See* Docket No. 39 at 4, ¶ 36 (citing Docket No. 32-3 at 22). Accordingly, this fact is deemed admitted.

plaintiff, in an email, stated again that her behavior had been professional and within the norms of Mercy. *Id.*, ¶ 46. Plaintiff stated that she was willing to find a solution to the issues, but that the solution would "not involve me taking responsibility for the improper suspension or admitting that my conduct was outside the accepted norms at Mercy." *Id.*, ¶ 47. Mr. McConnell respond that, because plaintiff was unwilling to take responsibility, "Mercy leadership 'was exploring other avenues.'" *Id.*, ¶ 48. Plaintiff and defendants attended a mediation on April 20, 2018, but no resolution was reached. *Id.* at 9, ¶ 55. Plaintiff was subsequently terminated because the parties were unable to come to a resolution.[11] *Id.* at 8, ¶¶ 49-50.

On July 30, 2019, plaintiff filed suit. *See* Docket No. 1. In her complaint, she brings claims for wrongful termination and retaliation in violation of Title VII and two state law tortious interference claims.[12] *Id.* at 35-37. On December 23, 2020, defendant moved for summary judgment on all of plaintiff's claims. *See* Docket No. 32.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.

---

[11] Plaintiff denies this fact, but appears only to deny that the termination was mutual. *See* Docket No. 39 at 5-6, ¶ 50. Accordingly, this fact is deemed admitted.

[12] Plaintiff has conceded that her tortious interference claims should be dismissed. *See* Docket No. 39 at 25.

5

*Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Discharge

Plaintiff asserts a claim for sex discrimination in violation of Title VII of the Civil Rights Act. Docket No. 1 at 35. Title VII makes it unlawful "for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1). Plaintiff's claim asserts disparate treatment, which can be demonstrated either by "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic" or by "using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015). Plaintiff does not contend there is evidence of direct discrimination, *see* Docket No. 39 at 14-16, and, as a result, the Court applies the *McDonnell Douglas* framework to her claims.

A plaintiff who is unable to demonstrate direct evidence of discrimination may use circumstantial evidence. *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 884 (10th Cir. 2018). In this situation, the Court applies the *McDonnell Douglas* three-step burden shifting framework. *See id.* (citing *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315-16 (10th Cir. 2017)). Under the first step, plaintiff must "establish a prima facie case of discrimination." *Id.* (citing *Bird v. W. Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016)). Plaintiff must demonstrate that she is (1) "a member of a protected class (2) who was terminated (3) despite being qualified for her position, and (4) the job wasn't eliminated." *Id.* If plaintiff succeeds in making a prima facie case, the second step requires defendant "to articulate a legitimate, nondiscriminatory reason" for

plaintiff's termination. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). At the third step, the burden shifts back to plaintiff to "show [that] there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *See Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

Defendants argue that, because it is undisputed that plaintiff was fired as a result of the parties being unable to come to a resolution regarding her third PRIP, plaintiff cannot make out a prima facie case. *See* Docket No. 32 at 11. Plaintiff responds that, because her termination was not mutual, she has made out a prima facie case. *See* Docket No. 39 at 16-17. Plaintiff misunderstands defendants' argument, and the Court agrees with defendants.

While plaintiff's burden at step one is "not onerous," she still must "show[] actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." *See Young*, 575 U.S. at 208 (citations and quotations omitted). As plaintiff admits, the reason she was discharged was because she and Mr. McConnell could not come to a resolution regarding the third PRIP. Docket No. 32 at 8, ¶ 49. Moreover, the circumstances surrounding that disagreement and the details leading to plaintiff's PRIP further demonstrate that plaintiff cannot make out a prima facie case of discharge based on being a woman. The third PRIP resulted from plaintiff's actions regarding her treatment of CG, where she told him that his pain was his fault, called him an asshole just outside his hospital room, and refused to communicate with him after she left the room. *Id.* at 4, ¶ 21. Under these

8

circumstances, combined with her statement that she was terminated because she and Mr. McConnell could not resolve the issues around the third PRIP, means it is not "more likely than not" that she was fired because of her sex. *See Young*, 575 U.S. at 208 (citations and quotations omitted). Rather, it is more likely than not that she was fired because she engaged in conduct prohibited by her employer for nondiscriminatory reasons and the issues surrounding that conduct were not resolved. *See Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1275 (10th Cir. 2006) ("We have long respected employers' wide latitude in setting job standards and requirements and in deciding whether applicants meet those standards.").

Nonetheless, even if plaintiff could make out a prima facie case, defendants have met their burden at step two of offering a legitimate, nondiscriminatory reason for plaintiff's discharge, *PVNF*, 487 F.3d at 800, namely, the failure to resolve the conflict and the underlying actions that led to the conflict. *See* Docket No. 32 at 12. The burden then switches to plaintiff to show that these reasons are pretextual. *White*, 405 F.3d at 1099. The Court finds that plaintiff has not met her burden.

A plaintiff can demonstrate pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002) (citations omitted). Typically, a plaintiff will do this in one of three ways: (1) the defendant's stated reason for the adverse employment action was false; (2) the defendant acted contrary to a written company policy; or (3) the defendant

acted contrary to an unwritten policy or practice. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

Plaintiff has failed to offer any evidence in the record that defendants' reasons for termination were false, that defendants acted contrary to a written policy, or that plaintiffs acted contrary to an unwritten policy. Plaintiff argues that defendants' explanations for her termination are inconsistent and, therefore, demonstrates pretext for her firing. *See* Docket No. 39 at 20. Plaintiff maintains that defendants have provided five explanations for her discharge: (1) she was discharged without cause; (2) her conduct towards patients was inappropriate; (3) her conduct toward staff was inappropriate; (4) her employment was mutually ended; and (5) she failed to take responsibility for her actions. *See id.* at 20-21. There are several problems with this argument.

First, explanations two, three, and five essentially involve the same conduct. The attempted third PRIP deals with her conduct toward staff and patients during the same incident, and her failure to take responsibility for those actions. Her previous two PRIPs involved similar conduct. The fourth explanation, that her employment was "mutually" terminated, is not an explanation because it says nothing about the reason for her termination. Plaintiff's termination without cause – allowing her to continue receiving certain privileges – was one of her own proposed requirements for mutual separation, and plaintiff offers no explanation of how defendants' adoption of an employee-proposed concession would convince a reasonable jury that the action was inconsistent with defendants' stated reason for her termination.

Plaintiff also argues that defendants failed to "equitably administer its pay

practices." *See* Docket No. 39 at 24. But whether defendants equitably administered pay practices has no bearing on the reasons for plaintiff's discharge. The question is whether the reasons for plaintiff's discharge are evidenced by pretext and "whether the employer honestly believed its reasons and acted in good faith upon them." *See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1268 (10th Cir. 2015) (citation omitted). The Court is in no position to "second-guess an employer's business judgment," *see id.*, and the only evidence in the record surrounding plaintiff's discharge is that she violated defendants' code of conduct on several occasions, failed to take responsibility for those actions, and that her conduct resulted in her discharge. Thus, even if plaintiff could make a prima facie case of gender discrimination – the "strength of" which is an element in analyzing pretext, *id.* – plaintiff has failed to demonstrate that defendants' proffered reasons are mere pretext. Defendants are therefore entitled to summary judgment.[13]

### B. Retaliation

A Title VII retaliation claim "require[s] an employee to demonstrate that, but for her protected activity, she would not have faced the alleged adverse employment action." *See Bennett*, 792 F.3d at 1269 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). However, if a plaintiff cannot make out a claim for

---

[13] Plaintiff argues that male doctors frequently did not have complaints lodged against them for similar conduct to hers. *See* Docket No. 39 at 23. Even if that is true, that does not serve to meet plaintiff's burden. Plaintiff does not offer any evidence that management was aware of specific instances where male colleagues acted in a similar manner. Rather, she suggests management did not know about these instances because they were not reported. *See id.* at 23-24. Plaintiff offers no support for her argument that information not before the decisonmakers can be evidence of pretext.

discharge based on sex, she cannot make out a claim for retaliation. *See id.* That is because, if the discharge is based on something other than protected activity, it cannot be the "but for" cause of her termination. Here, because the discharge was based on plaintiff's various disciplinary infractions and her failure to take responsibility, as described above, she cannot demonstrate that any protected activity, such as reporting gender discrimination, was the but for cause of her termination. Accordingly, defendants are entitled to summary judgment on this claim as well.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' Motion for Summary Judgment [Docket No. 32] is **GRANTED**. It is further

**ORDERED** that plaintiff's first and second claims under Title VII are **DISMISSED** with prejudice. It is further

**ORDERED** that plaintiff's third and fourth claims for tortious interference are **DISMISSED** with prejudice. It is further

**ORDERED** that judgment shall enter for defendants and against plaintiff on all claims. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED September 30, 2021.

                                    BY THE COURT:

                                    PHILIP A. BRIMMER
                                    Chief United States District Judge